UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

THOMAS ANDREW CENSKE,
                Petitioner,

vs.

UNITED STATES OF AMERICA,
                Respondent.
_____/

No. 2:14-cv-179
(Criminal Case No. 2:08-cr-19)
Hon R. Allan Edgar
United States District Judge

## OPINION AND ORDER

Petitioner Thomas Andrew Censke, currently an inmate at Federal Correctional Institution Terre Haute, brings this Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255, arguing that his standby trial counsel, counsel at resentencing, and appellate counsel provided him with constitutionally ineffective assistance of counsel.  After conducting the preliminary review required by Rule 4 of the Rules Governing § 2255 Proceedings and 28 U.S.C. § 2243, this Court will dismiss Censke's petition because it is clear that his allegations do not entitle him to relief.

I.

The facts of the case were provided by the Sixth Circuit Courts of Appeals in Censke's first appeal of right:

> Censke was indicted on two counts of mailing threatening communications on April 22, 2008. ECF No. 1. On May 5, 2008, Censke filed a motion to dismiss his appointed counsel and proceed pro se, and a motion to dismiss the indictment. ECF Nos. 9, 11. The district court entered an order for a psychiatric or psychological evaluation soon thereafter. ECF No. 18. Censke's motion to dismiss the indictment was subsequently denied, but his motion to proceed pro se was granted and his court-appointed attorney was appointed as stand-by counsel. ECF Nos. 52, 101. A superseding indictment was returned against Censke on October 28, 2008, adding two additional counts of mailing threatening communications. ECF No. 37. Specifically, the mailing of threatening communications charged in the superseding indictments included allegations of: (1) mailing a letter delivered on June 11, 2003, to Detective Steve Snowaert of the City of Marquette, Michigan Police Department containing threats to injure him; (2) mailing a letter delivered on March 9, 2006, to Pathways, a mental health clinic in Marquette, Michigan, threatening to injure Joseph Lavey II, an attorney representing Pathways; (3)

mailing a letter delivered on August 28, 2006, to Priscilla Burnham, an attorney representing Planned Parenthood, threatening to injure her, Ellen Rabe–Caverly, a former employee of Planned Parenthood, and Joseph Lavey II; and (4) mailing a letter delivered on February 29, 2008, to the Baraga County, Michigan, Prosecuting Attorney threatening to injure Wendy Goodreau, the Baraga County Circuit Court Clerk.

The letters, along with the corresponding envelopes, were admitted at trial as Exhibits 1–4A. Trial Tr. vol. I, 103–09, 155, July 20, 2009. Censke mailed the letters from the Newaygo County, Michigan Jail and three different Michigan Department of Corrections prison facilities. He was in custody at the Newaygo County Jail in 2002 and 2003 while awaiting trial on federal charges for making false statements in connection with the purchase of a firearm and possessing a firearm in November 2000 after being adjudicated a "mental defective." Presentence Report ¶¶ 39, 43, 46, 127. He was in the custody of the Michigan Department of Corrections after he was convicted on January 15, 2004, on state charges for aggravated stalking and malicious use of a telecommunications device, stemming from a telephone call he made in which he threatened to kill Lavey and for threats he made towards Detective Snowaert. On February 20, 2004, Censke was sentenced to three years, four months to five years by the 25th Circuit Court in Marquette, Michigan. He remained in state custody until April 24, 2008. Presentence Report ¶¶ 46, 128.

Censke filed motions to dismiss the federal charges against him on various constitutional grounds. The district court denied these motions. ECF Nos. 9, 61, 82, 88, 101, 140. Prior to trial, Censke filed over fifty other pretrial motions and documents, which included his motion to show cause "Why a Hearing Should Not Be Held to Evaluate the Compliance of the Government with Speedy Trial." ECF No. 155. The district court denied this motion, holding that Censke's other pretrial motions had tolled the Speedy Trial clock and that there were fifty days remaining. ECF No. 170; Motion Hr'g Tr. 10–11. The trial began on July 20, 2009. ECF No. 202.

The government called several witnesses to establish Censke's custodial location when the letters were mailed and to explain the mail procedure at the different institutions. Trial Tr. vol. I, 146–49,170, 174, 190, 195–96, 208–11. The government also called Lavey, who described his past involvement with Censke. Lavey represented Pathways and, at Pathways' request, drafted a letter requesting that Censke not go to Pathways' offices (the "no trespass letter"). The no trespass letter was sent to Censke in August 2000 in response to Censke coming onto Pathways' property. Censke subsequently filed a lawsuit against Pathways alleging claims for defamation and requesting records.

On January 14, 2001, Censke left a profanity-laced message on Lavey's answering machine about the no trespass letter Censke had received. Lavey recorded the call using a handheld dictaphone microcassette and described sounds he heard on the

recording as those of a shotgun being racked. The recorded call was played for the jury. Trial Tr. vol. II, 5–14, July 21, 2009. Censke called Lavey again that same day to ask if Lavey had received the earlier message, swore at him, and re-emphasized the earlier threat.

A recording of an April 25, 2003, collect call that Censke made from the Marquette County Jail to Lavey's office was also played for the jury. James Mitchell, Jr., an attorney who worked with Lavey, accepted the call. Censke instructed Mitchell to tell Lavey that Censke would put Lavey in his grave. Trial Tr. vol. I, 233. The district court gave a limiting instruction to the jury after the tape recordings were played. The limiting instruction advised the jury that it could consider the recording only to the extent it provided context for evaluating whether Lavey reasonably believed the letters Censke mailed him in 2006 were truly threatening and whether Censke knew of the letter and was, in fact, the person who mailed them. Trial Tr. vol. II, 19–20.

Later in the trial, Special Agent Timothy DeClaire of the Bureau of Alcohol, Tobacco, Firearms and Explosives demonstrated the sound of a pump action shotgun being racked. Trial Tr. vol. II 61–63. Censke objected to the demonstration. Censke also filed a motion in limine in which he argued that the sound on the recorded call to Lavey was not included in the original recording, and he suggested that it was inserted by law enforcement. Alternatively, Censke argued that the sound was not that of a shotgun being racked. Trial Tr. vol. I, 8–9; ECF Nos. 175, 176. Censke's motion in limine was denied. In response to Censke's objection, the district court advised that Censke was free to argue that the sound on the recording was not a shotgun but that of a door closing or some other noise. Trial Tr. vol. I, 8–9.

Lavey testified that he felt threatened by the telephone calls, and he described some of the precautions he took, including installing deadbolt locks at his home and locking the doors to his office. Trial Tr. vol. II, 14–17. He identified the 2006 letter, which was admitted as Exhibit 2, that was forwarded to him from Pathways. *Id.* at 22. He described specific statements in the letter he took as threats, including the drawing of a gun with a flag coming out of it that said "bang;" the word "murder" spelled backwards; and the statements "Kill Joe Lavey II" and "Fuck you. Your ass is grass." *Id.* at 23–27. He subsequently learned of the letter sent to Priscilla Burnham that included the statement, "Fuck you, I'm killing Lavey just to eliminate these lawsuits, baby." Lavey testified that he took those threats seriously. *Id.* at 29–30, 59–60.

Detective Snowaert testified that he had investigated the April 25, 2003, telephone call Mitchell received from Censke from the Marquette County Jail threatening Lavey. The same day that Mitchell received that call, Detective Snowaert received calls from the Marquette County Jail. The caller, later identified as Censke, said "Snowaert is a dead fag" and then hung up. Trial Tr. vol. II, 70. Detective Snowaert was also part of the investigation that led to

Censke's arrest in 2002 on federal firearms charges. Trial Tr. vol. II, 69–73. He identified the letter he received from Censke in the mail on June 11, 2003, and the envelope in which it was received, which were admitted as Exhibits 1 and 1A. Trial Tr. vol. II, 73–75. He described the threats contained in the letter, including a statement about "pigs" having their "head smashed or their brains splattered all over my streets"; "I like to get drunk and hunt down pigs"; "This is not a threat, it is a truth in your death sentence"; "I was thinking of killing you slowly, or slit your throat last 4 of '02 ..."; and "your number is up." *Id.* at 75–78. Detective Snowaert testified that he took all of these threats seriously. *Id.* at 79–80.

Mark Kupferer, a retired FBI Special Agent, testified that he had interviewed Censke on March 1, 2006, while Censke was an inmate at the Oaks Correctional Facility regarding the letter sent to Detective Snowaert. Censke denied preparing the letter, but said that he had written the return address on the envelope. Agent Kupferer advised Censke that if he sent threats through the mail, he could be prosecuted in federal court. When told this, Censke became very agitated and upset, and accused Agent Kupferer of violating his First, Fourth, and Fifth Amendment rights. Trial Tr. vol. II, 104–11.

Priscilla Burnham testified that she was an attorney representing Planned Parenthood in Marquette, Michigan, and had represented Planned Parenthood in a lawsuit Censke filed against it. Trial Tr. vol. II, 118. She received a letter from Censke in August 2006, threatening to kill Lavey "to eliminate these lawsuits." *Id.* at 121, 125–26. The letter and envelope were admitted into evidence as Exhibits 3 and 3A. *Id.* The letter was directed to Burnham and Ellen Rabe–Caverly, one of the former employees of Planned Parenthood. Attached to the letter was a drawing of a silhouette of a female who appeared to be in the crosshairs of a rifle scope. *Id.* at 123. Burnham testified that she took these threats seriously and took precautions including increasing the security at her residence. *Id.* at 126–30. Ellen Rabe–Caverly also testified that she had seen the letter and she found it to be very threatening. *Id.* at 161.

Joseph O'Leary, the Baraga County Prosecuting Attorney, testified that he had received a letter from Censke on February 29, 2008. The letter and envelope were admitted into evidence as Exhibits 4 and 4A. The letter was sent from a maximum security prison located a few miles from his office and contained a statement about the Baraga County Clerk, Wendy Goodreau, that he considered to be a death threat. Trial Tr. vol. II, 178–82. Goodreau testified that she had previously rejected documents that Censke had tried to file in the Baraga County Circuit Court. *Id.* at 210–11. She was later made aware of the letter that had been sent to O'Leary. She interpreted the letter, which threatened to make her "extinct," as a death threat. Her fear was heightened by her office's close proximity to the prison and Censke's approaching release date. *Id.* at 212–14.

An FBI handwriting expert, Peter Belcastro, examined Exhibits 1 through 4A and compared them to known handwriting samples from Censke. He testified that, in

4

his opinion, Censke had prepared almost all of the writing on Exhibits 1 through 4A. Trial Tr. vol. III, 14–18, July 22, 2009. Belcastro could not offer an opinion as to who was responsible for the drawings included with the writings. *Id.* at 18.

Censke also testified at trial. He denied preparing or mailing the letter and corresponding envelope to Detective Snowaert, Exhibits 1 and 1A, with the possible exception of the handwriting on the front of the envelope. He admitted preparing and mailing the letters and envelopes admitted as Exhibits 2 through 4A but claimed that they were incomplete because they were missing disclaimers Censke had included about a book he was developing. Trial Tr. vol. III, 79, 84, 91–93, 97–98, 104–06, 111–12, 117–21. He also testified that the letters were jokes and that he had no intent to carry out the actions he described in them. *Id.* at 146–47.

The jury returned a verdict on September 22, 2009, finding Censke guilty of all four counts in the superseding indictment. *Id.* at 214–15; ECF No. 205.

At sentencing, the district court, after considering several objections, concluded that the sentencing guidelines range was 70 to 87 months based on an offense level of 21 and a criminal history category of V. Sentencing Tr. 53–54, Oct. 20, 2009. The district court imposed a total sentence of 120 months based on its belief that Censke's victims and the general public deserved protection because Censke had been incarcerated for shorter periods of time that had no effect upon his conduct. The district court also based its above-guidelines sentence on its belief that the medical and psychological treatment that Censke needed would take a considerable period of time, given his mental health and criminal history. *Id.* at 82–86. Censke now appeals the district court's conclusion regarding his Speedy Trial motion, the district court's decision to allow the recordings of Censke's prior telephone calls at trial, and the district court's inclusion of rehabilitation as part of its rationale for imposing an above-guidelines sentence.

*United States v. Censke*, 449 F. App'x 456, 458-62 (6th Cir. 2011).

On appeal, appointed appellate counsel argued that the district court improperly concluded that the Speedy Trial Act was not violated, that the prior threatening phone calls were improperly admitted, and that the sentence was improperly lengthened to promote rehabilitation. In addition to the briefs filed by appellate counsel, Censke also filed what he titled "Appellant-Defendants Pro Se Reply Brief." A panel of the Sixth Circuit Court of Appeals affirmed Censke's conviction but vacated the sentence because the Sentencing Reform Act precludes the sentencing court from increasing a prison term in order to promote a defendant's rehabilitation. *Id.* at 471 (citing *Tapia v. United States*, 131 S.Ct. 2382 (2011)).

Following remand, the Court appointed resentencing counsel to represent Censke at the May 2012 resentencing. Resentencing counsel filed two motions, one for a mental health reevaluation and one for an updated PSR, to show that Censke's post-sentence rehabilitation. Additionally, counsel provided a sentencing memorandum that argued for sentencing within the 70- to 87-month Guidelines range. This Court denied the motions and sentenced Censke to the same term of imprisonment: 120 months. On appeal of the resentence, the Sixth Circuit appointed new appellate counsel who made three failing arguments challenging the sentence as procedurally unreasonable. *United States v. Censke*, 534 F. App'x 382 (6th Cir. 2013). Cenkse pro se petitioned the original panel for rehearing, which was denied. The United States Supreme Court denied a petition for writ of certiorari on December 9, 2013. *Censke v. United States*, 134 S.Ct. 807, 187 L. Ed. 2d 611 (2013).

Censke brings the current motion for post-conviction relief arguing that his standby trial counsel, counsel at resentencing, and appellate counsel provided him with constitutionally ineffective assistance of counsel. Many of Censke's claims include multiple subparts, some overlap, and arguments irrelevant to his claims of ineffective assistance of counsel. This Court has attempted to group the claims into arguments under each counsel. After reviewing Censke's arguments, it is clear that his claims are contrary to the record or plainly do not entitle him to relief.

II.

After filing a habeas corpus petition, the court must conduct a preliminary review of the petition to determine whether "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4, Rules Governing § 2255 Proceedings; 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as claims containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). Dismissal is appropriate if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).

Censke takes issue with the performance of his trial standby counsel, re-sentencing counsel, and appellate counsels. Ordinarily, claims of ineffective of counsel are subject to

*Strickland's* two-part test:  that the lawyer provided deficient counsel and that the defective representation prejudiced the outcome.  466 U.S. 668, 687 (1984).

### A.

Censke wants the best of both worlds; the ability to represent himself and when things go awry to blame his standby counsel.  When a defendant exercises his right to represent himself, he necessarily waives his constitutional right to be represented by counsel. *See Faretta v. California,* 422 U.S. 806, 834 (1975).  Logically, a defendant cannot waive his right to counsel and then complain about the quality of his own defense.  *Id.* at 834 n. 46; *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008); *Gall v. Parker,* 231 F.3d 265, 320 (6th Cir. 2000).  Cenke's standby counsel was appointed to assist Censke not represent him.  Therefore, all claims of ineffective assistance of counsel against standby counsel do not entitle Censke to relief.

### B.

Second, Censke argues that his re-sentencing counsel failed to object to certain items at resentencing that failed to preserve this issue for appeal.  He also argues that resentencing counsel failed to object or strongly argue against the district court's decision to impose the same sentence.  Resentencing counsel filed two motions that were both denied by the district court: one for a reevaluation of the PSR and one to reevaluate the mental health of the defendant. Both motions were to help show the rehabilitation of the defendant.  Counsel also argued for a within Guidelines range sentence.  Ultimately, the court denied the motion and resentenced Censke to the same term of confinement based on the need to protect the public, specifically the victim's of Censke's crimes, based on his history of mental instability, the high number of threats and Censke's continued refusal to accept his wrong actions.

Censke's arguments that resentencing counsel failed to do his job is without merit.  Once counsel made the motion and was denied, he preserved the issue for appeal.  Contrary to the television courtroom where one would attempt to "strenuously object," there is nothing more to be done.  Further, appellate counsel argued and lost on the same issues raised by counsel, which is support that resentencing counsel argued properly for those motions.

Finally, even if counsel's performance was deficient, there is no indication that Censke suffered any prejudice.  He does not explain how the result would have been any different.  Censke's argument is almost entirely contrary to the record and fails to show meet the first prong of *Strickland*. Even if Censke were to meet the first prong, he fails to state any specific prejudice.

C.

Finally, Censke claims that his appellate counsels were ineffective for a variety of reasons linked to the arguments made on appeal.  An appellant has no constitutional right to have every non-frivolous issue raised on appeal. Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. Feb. 26, 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.*  The court should also recognize that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment."  *Strickland*, 466 U.S. at 690.  Habeas courts should also avoid second-guessing counsel with the benefit of hindsight. *Id.*

Not only did appellate counsel winnow out weaker arguments, but appellate counsel on first appeal succeeded on the argument that the trial court imposed a sentence using an improper factor.  While this success alone does not suffice to overcome a possible failure to raise other meritorious issues, it is certainly indicia of effective appellate advocacy.  Ironically, the very arguments Censke uses to support his ineffective assistance of appellate counsel claims were made by appellate counsel. It looks as though Cenkse is adding the phrase "ineffective assistance of counsel" to the front end of his appellate counsels' failed appellate arguments because he does not like the result.

### i. Speedy Trial Act Appeal

Cenkse argues that his first appellate counsel was ineffective for failing "to raise and argue relevant precedent or facts of STA." (2:14-cv-179: Docket #2 at 23) More specifically, Censke argues that his appellate counsel on first appeal of right was ineffective for failing to argue that some time he spent traveling to and from his mental competency examination should not have been exempt under the Speedy Trial Act and that a proper calculation would have violated the law.  Attempting to clarify Censke's argument, this Court believes that he argues that Magistrate Judge Greeley's order for a thirty-day evaluation combined with the ten statutorily allotted travel days, § 3161(h)(1)(F), is tolled.  However, he believes that once these forty days expired any time between expiration and his competency hearing should not be tolled.  According to Censke, this would result in seventy-one days not exempt.  Censke argues that in combination with the fifty days calculated by the Sixth Circuit, this would result in around 121 days, and a clear violation of the STA.

The problem for Censke is that he is incorrect on both factual and legal grounds.  On June 3, 2008, Magistrate Judge Greeley ordered that Censke be placed "in a suitable facility for a period not to exceed thirty (30) days."  (2:08-cr-19, Docket #18.)  Censke arrived at the Metropolitan Correctional Center (MCC) in Chicago, Illinois on June 16, 2008.  (Docket #23, Sealed Psychological Report.)  Magistrate Judge Greeley, based on a request from MCC, granted a fifteen day extension of time to perform the evaluation, "with an understanding that the evaluation will be completed on or before **July 28, 2008**."  (Docket #22 (emphasis in order).)  The report was filed and the competency hearing occurred on September 22, 2008. (Docket #22.)

Even if Censke was correct that the order created an expiration of time tolled, it would be July 28, 2008.  Nevertheless, any time used to determine the mental competency of the defendant is automatically tolled under the statute.  18 U.S.C. § 3161(h)(1)(A).  The time Censke spent at MCC is automatically excluded.

The Sixth Circuit Court of Appeals  held that "the time from the district court's order for a psychiatric examination on June 3, 2008, to the time of the hearing at which Censke was found to be competent on September 22, 2008, is excludable from the Speedy Trial clock." *Censke*, 449 F. App'x at 464.  Censke argues that this is incorrect and makes much of the ten day travel time in subsection (h)(1)(F).  Here, Censke is partially correct in concluding that the Sixth Circuit got it wrong and that some time could have been included.  However, Censke's overall reading of

(h)(1)(F), when combined with the entire section is incorrect.  Making matters more complicated is that the Speedy Trial Act has an exception with an exception:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> > (1) Any period of delay resulting from other proceedings concerning the defendants, including but not limited to—
> >
> > > . . .
> > >
> > > (F) delay resulting from transportation of any defendant from another district, or to or from places of examination or in hospitalization, *except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable.*

18 U.S.C. § 3161(h)(1)(F).  The presumption under subsection (h)(1)(F) is that more than ten days travel time to a place of examination is presumptively unreasonable.  It took Censke thirteen days from the time of the order to arrive at MCC, and therefore, three days are presumptively counted against the seventy day requirement.  This would normally bring the total days to fifty-three.

Where Censke is wrong, and the Sixth Circuit correct, is that time excludable under another subsection ran concurrent to the technical three day travel violation.  The Sixth Circuit held that

> [o]n May 12, 2008, Censke filed two motions: a motion to dismiss the indictment and a motion to dismiss his appointed counsel and to represent himself. ECF Nos. 9, 11. The filing of these motions tolled the Speedy Trial clock until the hearing on the motions.  18 U.S.C. § 3161(h)(1)(D). On May 28, 2008, the district court held a hearing on Censke's motion to dismiss counsel and to represent himself. The district court took Censke's motion to dismiss his appointed counsel under advisement. Accordingly, the time through June 27, 2008, is excludable. 18 U.S.C. § 3161(h)(1)(D) (providing that a delay, not to exceed thirty days, during which a decision concerning the defendant is under advisement is excludable delay).

*Censke*, 449 F. App'x at 463-64.  The three days of travel that technically violated subsection (h)(1)(F) occurred on June 13-16, 2008, while the motions time was tolled.  In all, between May

5, 2008 and September 29, 2008, only six days elapsed on the Speedy Trial clock, exactly as the Court of Appeals calculated.  Although appellate counsel did not raise the specific argument Censke now raises, counsel did argue that a total of 255 days passed on the Speedy Trial clock and that the district court failed to determine what time was excludable.  Appellate counsel was attempting to have the case remanded for a determination of the exact dates by the trial judge.  However, the Court of Appeals decided the issue without remand.

Censke also makes a variety of arguments about certain tolling not counting because of the "contributory negligence of Pro Se defendant." (2:14-cv-179: Docket #2 at 25)  As mentioned before, Defendant is unable use his pro se status to now take advantage of his decision.  Even if appellate counsel failed to make this argument, as shown above, Censke is not prejudiced by any error because, even if Censke is correct, and six days were added to the clock, he still falls short of the seventy day requirement.

### ii. Failure to Raise Issue of Rehabilitative Sentence

After resentencing, Cenkse argues that resentencing appellate counsel failed to challenge or take issue with his sentence as rehabilitative because the court imposed the same sentence length.  Censke's argument is not clear.  As best can be deciphered, Censke generally takes issue with the judge imposing the same sentence but on different grounds.  Censke believes that this Court masked its rehabilitative reasoning in different factors.  While Censke does take issue with this, so did his appellate counsel.  Another possibility is that appellate counsel should have somehow more vigorously challenged or argued that the district court's denial of motions for an updated psychological evaluation and PSR denied the court an opportunity to favorably view his post-sentence rehabilitation.

In either event, post-sentencing appellate counsel argued that the motions should have been granted and permitted because of its relevance to the sentence.  The Sixth Circuit reviewed these arguments and concluded that the district court was not required to order an updated PSR or mental evaluation.  *United States v. Censke*, 534 F. App'x 382, 385–86 (6th Cir. 2013).  Although appellate counsel does not explicitly argue that the resentencing masked the "real" reasons for the court's decision to sentence Censke to the same amount of time, counsel made a decision and attempted to make the best available arguments.

Censke does not cite any law to support his assertion. Further, he does not show how appellate counsel should have argued any differently.  His mere assertions that resentencing trial

11

counsel should have objected to the decision to deny motions for an updated PSR or mental evaluation and that appellate counsel should have argued that district court masked his real reason for his decision is without merit. Even if his argument had merit there is nothing to suggest that Censke was prejudiced by the alleged failure to argue differently.

Further supporting that no prejudice occurred, the trial court reviewed the post-sentence rehabilitative evidence and the Sixth Circuit concluded the same after reviewing the trial court's decision:

The district court denied the motion for an updated mental evaluation, stating:

I have a pre-sentence report. In addition to that, of course, this Court has sat through and presided at the trial of Mr. Censke and heard all of the evidence that was presented at that trial.... So my ruling on this motion for a psychiatric or psychological exam at this time is that the defendant speculates that the main reason for the defendant's sentence was my concern about recidivism, due to the defendant's mental status, and the defendant seeks a new mental exam which he thinks would demonstrate that he is now in better mental shape than he was when he was sentenced a couple of years ago.

...

I don't think a new mental exam for the defendant here is warranted. It is evident that he has not changed.... He still is proving himself to be a difficult prisoner. He, as we have heard here, had to be removed from the Chippewa County Jail, transported to a federal FBP Milan, Michigan. This is a continuation of his acting up in custody prior to his being on trial here the last time. Nothing has changed. And whether or not his mental state has improved, his conduct surely hasn't, and so I perceive him to still be the same threat to public safety as he was before, when I originally sentenced him. So, therefore, the motion for psychological exam ... is denied.

PID 1756–57. The court also denied Censke's motion for an updated PSR after noting that it had reviewed the documents Censke submitted with his sentencing memorandum:

I think that this Court has a comprehensive pre-sentence report. I don't think that I need another one. And I don't think that another one would provide any ... useful information that would be anything different from what I already have in the original report. And, of course, as I said before, I sat through the trial so I am also

familiar with the facts in the case. And so I am going to respectfully deny that motion ...

PID 1758. Censke allocuted at some length but only briefly alluded to his post-sentencing rehabilitation.

### D.

The district court was permitted to and did, in fact, review the post-sentence rehabilitation evidence that Censke submitted with his sentencing memorandum and addendum, i.e., his documented coursework and Dr. Rhinehart's psychological reports from 2010. *See Pepper,* 131 S.Ct. at 1241–42; *United States v. Carter,* 444 Fed.Appx. 862, 864–65 (6th Cir.2011),

Counsel conceded at the resentencing that the district court was not *obligated* to order an updated PSR under either Fed.R.Crim.P. 32(c) or 18 U.S.C. § 3552(a), but that "it would seem reasonable that the Court would want an updated report." PID 1755. Censke cites no authority to support that the denial of his motion for an updated PSR constituted procedural error.

Nor was the district court required to order an updated mental evaluation. *See* 18 U.S.C. § 3552(c) (if, after receipt of a PSR or psychiatric or psychological report, the district court "desires more information than is otherwise available to it," "the court may order the same psychiatric or psychological examination and report thereon").

There is also no merit to Censke's argument that, by denying his motions for an updated mental status evaluation and PSR, the district court violated 18 U.S.C. § 3661. Section 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court ... may receive and consider for the purpose of imposing an appropriate sentence." The statute does not affirmatively obligate a sentencing court to request updated mental evaluations or PSRs.

### E.

The district court concluded that an above-Guidelines sentence was needed to protect the victims of Censke's crimes and the public, citing Censke's history of instability, his numerous threats, and his continued denial of wrongdoing. The court summarized the threats Censke made that led to his convictions, which included death threats to public officials and others, recounted the fears the victims expressed, and observed that during Censke's 2 ½ years in prison he remained a problem. The district court did not abuse its discretion by denying either of Censke's motions and those rulings did not render the sentence procedurally unreasonable. For these reasons, we AFFIRM the 120–month sentence imposed at Censke's resentencing.

*Censke*, 534 F. App'x at 384–86. Cenkse was fails to show that appeallte counsel's performance was deficient or that he was prejudiced.

### iii. Miscellaneous Evidentiary Rulings

Censke makes an argument that appellate counsel on first appeal was ineffective for not investigating or raising the issue of a false audio tape, denied witnesses, and a FRE 404(b) argument.  Censke's accusations are so fantastic that few, if any, attorneys would have investigated the claims Censke has made. In any event, his appellate counsel argued, and the Sixth Circuit addressed, the issues Censke claims were not argued by appellate counsel. The Sixth Circuit addressed the phone call recordings: "In the present case, it is not disputed that Censke made the prior calls; Censke disputes only the sound of a shotgun in the background of one of the recordings." *Censke*, 449 F. App'x at 468.  And, the Sixth Circuit determined that the phone call was properly admitted under 404(b):

> Moreover, even if the district court erred in admitting the evidence, we must still determine whether its admission was harmless. The Court considers what the error meant to the jury in relation to all that happened. *United States v. Pugh,* 405 F.3d 390, 400 (6th Cir.2005). Because the district court's admission of the recordings as intrinsic evidence was not clear error, any error in alternatively admitting the recordings as Rule 404(b) evidence was, in turn, harmless error.

*Id.* at 469.  The last issue raised by Censke under this subsection is the failure to argue that the denied witnesses should have been allowed as character witnesses at trial.  However, Censke only states that "favorable evidence . . . and testimony (witnesses not subpeonad [sic]) . . . denied . . . would put the whole case in such a different light, a to undermine the confidence in verdict." Censke later states that some testimony to do with the context his social relationship the victims would have made a difference.  Censke does not explain what these witnesses would have said or how their testimony would have made a difference in the verdict.  Typically, Censke avers that he was wronged and that had the district court not ruled against him the verdict would be different.

By all accounts the court appointed appellate counsels performed their function properly. In fact, the appellate counsel on first appeal won on one of the arguments for resentencing. Censke has failed to show that any counsel performed below their professional levels of expertise.  Moreover, Censke's arguments are in almost complete opposition to the record, appellate briefs, and Sixth Circuit opinions.

III.

In summary, the Court finds that Petitioner's claims are without merit and therefore will dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A dismissal of petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, if the court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Commissioner of Correction of the State of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. Aug.27, 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484. The Court concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Consequently, the Court has examined each of petitioner's claims under the *Slack* standard.

For the same reasons that the Court has dismissed this action, the Court will certify pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24 that any appeal by petitioner from the Court's decision and the judgment would be frivolous and not taken in good faith. Therefore, any application by Censke for leave to proceed in forma pauperis on appeal is hereby DENIED.

Pursuant to Rule 4, Cenkse's motion for post-conviction relief pursuant to 28 U.S.C. § 2255 (Docket #1) is **DENIED AND DISMISSED WITH PREJUDICE**. A judgment consistent with this Opinion and Order will be entered.

**SO ORDERED.**

Dated:  _____9/11/2014_____          _____/s/ R. Allan Edgar_____
                                        R. Allan Edgar
                                        United States District Court Judge